STATE

v.

**Pedro FIGUEROA.**

STATE

v.

**Eduardo TAVAREZ.**

Nos. 93–121–C.A., 92–659–C.A.

Supreme Court of Rhode Island.

March 28, 1994.

Jeffrey Pine, Atty. Gen., Aaron Weisman, Chief, Appellate Div., Jane McSoley, Asst. Atty. Gen., for Tavarez.

Sharon Collins, Roberto Gonzalez, Rappoport, Audette, Bazar & Farley, East Providence, for defendant.

## OPINION

SHEA, Justice.

The defendants in these consolidated cases appeal the denial of their respective applications for postconviction relief. In unrelated cases, each defendant pleaded nolo contendere to a charge of possession of a firearm without a license. The defendant, Eduardo Tavarez, also pleaded nolo to an additional charge of possession of a firearm by an alien. Each defendant at the time of his arrest was a lawful, permanent resident of the United States. Each defendant is a national of the Dominican Republic. As a result of the weapon charges, the Immigration and Naturalization Service (INS) instituted deportation proceedings against the two men pursuant to 8 U.S.C. § 1251 s. 241(a)(2)(C).[1]

Each defendant argued at his respective hearing on postconviction relief that his nolo plea should be vacated because it was not entered voluntarily or intelligently. Each claimed that his plea and the resulting deportation constituted manifest injustice and therefore his application for postconviction relief should have been allowed. Each asserted that he would have chosen to go to trial if he had known that the INS would institute deportation proceedings against him.

Specifically, defendant Eduardo Tavarez (Tavarez) argued that although he was aware of the possibility of deportation because of his plea, his attorney thought Tavarez would be successful with a statutory waiver under 8 U.S.C. § 1182 s. 212(c) of the Immigration and Nationality Act at Immigration Court since he had been in the country for some

---

1. Section 241 of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(C) states in pertinent part:

"Any alien * * * in the United States shall, upon the order of the Attorney General, be deported if the alien is within one or more of the following classes of deportable aliens:

* * * Any alien who at any time after entry is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying in violation of any law, any weapon, part, or accessory which is a firearm or destructive device." (As amended by the Immigration Act of 1990.)

time, had an excellent work record, and had no family trouble.

Tavarez further asserted that neither he nor his attorney could have known that the immigration law would be changed just weeks after his plea was entered such that aliens convicted of a gun charge were ineligible for the statutory relief previously available and would be automatically deportable.[2] He argued that the change in the law rendered the deportation consequences a direct result of his plea, and to avoid a manifest injustice the law should not be applied retroactively to him.

The defendant Pedro Figueroa (Figueroa) argued that he entered his plea of nolo contendere based upon the misinformation given to him by his attorney that such a plea was not a conviction for immigration purposes and therefore no deportation proceedings would be commenced against him. He asserted that this misrepresentation constituted ineffective assistance of counsel and therefore his plea was involuntary. He further averred that his plea, based upon his attorney's misrepresentation, constituted a manifest injustice and should have been withdrawn.

Both hearing justices held that deportation was a collateral consequence of a nolo plea and therefore lack of knowledge by defendant did not destroy the validity of the plea. The defendants' respective applications for postconviction relief were denied.

The first issue underlying both appeals is whether lack of knowledge of the deportation consequences by defendants at the time their nolo contendere pleas were entered make the pleas involuntary.

Guilty pleas are valid only if voluntarily and intelligently entered, and the record must so affirmatively disclose. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969). A plea of nolo contendere is the substantive equivalent of a guilty plea in Rhode Island. *State v. Feng,* 421 A.2d 1258, 1266 (R.I.1980); *Cole v. Langlois,* 99 R.I. 138, 140–41, 206 A.2d 216, 217 (1965). "[A] plea will be vacated when it is shown to have been obtained from a defendant unaware and uninformed as to its nature and its effect as a waiver of his fundamental rights." *Cole,* 99 R.I. at 141, 206 A.2d at 218 (citing *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927)). The defendants bear the burden of proving by a preponderance of the evidence that they did not intelligently and understandingly waive their rights. *Cole,* 99 R.I. at 142–43, 206 A.2d at 218–19 (citing *Moore v. Michigan,* 355 U.S. 155, 161–62, 78 S.Ct. 191, 195, 2 L.Ed.2d 167, 172 (1957)).

Acknowledging the importance of ensuring the voluntariness of a plea, Rhode Island adopted Rule 11 of the Superior Court Rules of Criminal Procedure, which states in pertinent part:

"The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and de-

---

**2.** The act, 8 U.S.C. § 1182 s. 212(c) provides, "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General. * * * [T]his subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years."
(As amended by Secs. 511 and 601(d) of the Immigration Act of 1990, Act of Nov. 29, 1990, Pub.L. No. 101–649, 104 Stat. 4978.) The waiver is also available to lawful permanent residents of at least seven years in deportation proceedings. The limitation on the waiver for returning permanent residents who are convicted of an aggravated felony and who have served a five-year imprisonment term is applicable to admissions occurring after Nov. 29, 1990. Sec. 511(b) of Pub.L. 101–649.

The term "aggravated felony" includes "any illicit trafficking in any firearms or destructive devices as defined in section 921 * * * for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years." 8 U.S.C. § 1101(a)(43). Although defendant's contention of his ineligibility under 212(c) may be flawed in light of the five-year imprisonment requirement—defendant was sentenced as to each count to two years suspended to run concurrently and two years probation—this court will not now undertake construction of the federal law. The defendant's eligibility or ineligibility for a 212(c) waiver is of no consequence to the holding in this case.

termining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

Each defendant contends that his plea was not entered voluntarily or intelligently because he was unaware of the deportation consequences and therefore, his application should have been allowed. Each relies upon G.L.1956 (1981 Reenactment) § 12–12–22, as amended by P.L.1984, ch. 123, § 1, which states:

"At the time of criminal arraignment in the district or superior court, each defendant shall be informed that if he or she is an alien in the United States, a plea of guilty or nolo contendere may affect his or her immigration status. Failure to so inform the defendant shall not invalidate any action subsequently taken by the court."

The defendants interpret the statute as creating a duty upon the court to advise alien defendants that pleas of guilty or nolo contendere may have immigration effects. We do not agree with this expansive reading and refuse to impose such a burden on trial justices.

 A defendant need only be made aware of the direct consequences of his plea for it to be valid. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 760 (1970) (citing *Shelton v. United States*, 242 F.2d 101, 115 (5th Cir. 1957)); *United States v. Russell*, 686 F.2d 35, 38 (D.C.Cir.1982). The possibility of deportation is only a collateral consequence "because that sanction is controlled by an agency which operates beyond the direct authority of the trial judge." *Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir.1977)(citing *Fruchtman v. Kenton*, 531 F.2d 946, 948–49 (9th Cir), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976)). *See also United States v. Osiemi*, 980 F.2d 344, 349 (5th Cir.1993); *United States v. Montoya*, 891 F.2d 1273, 1293 (7th Cir.1989); *United States v. Quin*, 836 F.2d 654, 655 (1st Cir.1988); *United States v. Romero–Vilca*, 850 F.2d 177, 179 (3rd Cir.1988); *United States v. Campbell*, 778 F.2d 764, 767 (11th Cir.1985); *United States v. Briscoe*, 432 F.2d 1351, 1353 (D.C.Cir.1970); *Chukwurah v. United States*, 813 F.Supp. 161, 165 (E.D.N.Y.1993); *United States v. Nagaro–Garbin*, 653 F.Supp. 586, 589 (E.D.Mich.1987); *People v. Pozo*, 746 P.2d 523, 526 (Colo.1987).

 In the instant actions, defendants were made aware that possible immigration consequences could result from their pleas: Figueroa by the immigration paragraph contained in the Spanish plea form, Tavarez by his attorney. Therefore, the requirement of § 12–12–22 was met in both actions. There is no duty to inform alien defendants of the collateral consequence of possible or certain deportation.

Tavarez asserted that because the immigration law changed just weeks after his nolo plea was entered so that he was no longer eligible for statutory relief from deportation, his deportation must be deemed a direct consequence of his plea. However, he admits that his attorney properly informed him of the law as it existed at the time his plea was entered. He further impliedly conceded that he was aware that there was a possibility, although very remote, of deportation from his plea under the law as it existed at the relevant time because relief under 212(c) was not guaranteed.

 Immigration laws are considered civil in nature and therefore retroactive application is not violative of the ex post facto clause. *United States v. Bodre*, 948 F.2d 28, 31 (1st Cir.1991). A voluntary plea of guilty, intelligently made in light of the then-applicable law, does not become vulnerable because of a later enacted or adopted change. *Brady*, 397 U.S. at 757, 90 S.Ct. at 1473, 25 L.Ed.2d at 761.

 Tavarez's counsel informed him that he would most probably not be deported as a consequence of the plea because he was statutorily eligible for relief from deportation and possessed the necessary positive equities to obtain said relief. That advice was proper and correct in light of the law as it existed at the time defendant's plea was entered. A change in the immigration law does not change the status of deportation from a collateral consequence to a direct consequence. Nor does the retroactive application of the new immigration law constitute manifest injustice. The trial justice properly denied

Tavarez's application for postconviction relief on this ground.

Figueroa's appeal additionally asserted that he was denied effective assistance of counsel in making his plea of nolo contendere and therefore his plea was involuntary. He argued that deportation was the most significant consequence of the gun charge with which he was concerned. Therefore, he specifically inquired of his attorney about the immigration effects of entering a nolo plea. His counsel testified at the hearing that he gave defendant erroneous advice that the nolo plea was not a conviction under Rhode Island law and would not affect his immigration status or his ability to become a United States citizen.

Figueroa further contended that although his signature appeared on the Spanish plea-agreement form, which contained a paragraph advising of possible immigration consequences from a nolo or guilty plea, he did not sign the form with understanding. The defendant's teenaged son, who is a United States citizen and speaks English as his primary language, served as the interpreter during the plea session. Figueroa argued that his son translated the English plea form into Spanish, which does not contain the immigration paragraph, believing the forms were identical. Trial counsel testified that it was his belief that the English and the Spanish forms were the same, and he so advised his client. However, at the hearing, Figueroa read aloud the immigration clause from the Spanish form, illustrating that he was capable of reading the form, and the warning contained therein, before signing it.

■■■■■ When analyzing a claim of ineffective assistance of counsel, the court must be persuaded that counsel's performance was deficient and that the deficient performance prejudiced that defendant to such a degree that he was deprived of effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674, 693 (1984). A strong presumption in favor of competent representation exists. *Id.* at 689–90, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95. Prejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the

proceeding would have been different. *Id.* at 687, 104 S.Ct. at 2064–65, 80 L.Ed.2d at 693; *Nagaro–Garbin,* 653 F.Supp. at 589. When evaluating a claim for ineffective assistance of counsel in a plea situation, the defendant must demonstrate a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985); *United States v. Del Rosario,* 902 F.2d 55, 57 (D.C.Cir.1990). In addition, a defendant must show that the outcome of his or her case would have been different had he or she been aware of the likely deportation consequences of the guilty plea. *Hill,* 474 U.S. at 57, 106 S.Ct. at 369, 88 L.Ed.2d at 209; *Del Rosario,* 902 F.2d at 58.

■■■■■ The trial court's conclusion regarding the voluntary nature of the defendant's plea of guilty "must rest upon whether or not the underlying advice falls within the range of competence demanded of attorneys in criminal cases." *State v. Dufresne,* 436 A.2d 720, 724 (R.I.1981). In some circumstances, the fact that a defendant has been misled as to the consequences of deportability may render his or her guilty plea subject to attack. *Downs–Morgan v. United States,* 765 F.2d 1534, 1540 (11th Cir.1985); *Briscoe,* 432 F.2d at 1353; *Chukwurah,* 813 F.Supp. at 165.

■■■■■ This case is unusual in that an evidentiary hearing to determine what counsel told Figueroa is not necessary. He and his trial counsel agree that Figueroa was advised that a nolo plea would not negatively affect his immigration status and was told that the Spanish plea form was identical to the English form. Although these misrepresentations may have fallen below acceptable standards of attorney performance, Figueroa did not satisfactorily prove that the outcome of this action would have been different if he had proceeded to trial. Figueroa's brief is devoid of any argument or references to evidence tending to show his innocence of the underlying weapons charge. He admitted ownership of a loaded firearm without a license at the postconviction relief hearing.

Therefore, it is most probable that a trial would have resulted in a conviction, with Figueroa facing imprisonment rather than a sentence of probation for the weapons violation, and deportation. We conclude, therefore, that under the circumstances Figueroa was not denied effective assistance of counsel, that his plea was voluntary, and that the application for postconviction relief was properly denied.

For all these reasons the defendants' appeals are denied and dismissed, and the judgments appealed from are affirmed.